UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELISSA J. WALKER,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-06-0016-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on August 28, 2006. (Ct. Rec. 16, 20). Plaintiff Melissa Walker ("Plaintiff") filed a reply brief on August 11, 2006. (Ct. Rec. 21). Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney Nancy Mishalanie represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 19) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 16).
///

- 1 -

**JURISDICTION**

On September 20, 2002, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since January 1, 1997,[1] due to rheumatoid arthritis and a bipolar disorder. (Administrative Record ("AR") 66-73). Plaintiff previously filed an application for disability benefits on June 5, 1984 and received benefits which were eventually terminated. (AR 18). She filed another application for SSI on September 7, 1990, which was denied initially with no further appeal sought. (AR 18). Plaintiff's current application for SSI was denied initially and on reconsideration. (AR 44-50).

On March 22, 2005, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul L. Gaughen, at which time testimony was taken from Plaintiff, medical expert Allen Bostwick, and vocational expert Tom Moreland. (AR 529-575). On April 26, 2005, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 18-34). The Appeals Council denied a request for review on December 23, 2005. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on January 13, 2006. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was

---

[1] SSI benefits may not be awarded prior to the date of the application for benefits. 20 C.F.R. §416.330.

43 years old on the date of the ALJ's decision, has more than a high school education and has past work experience as a book binder, a tavern owner, a bar attendant, a short order clerk, a clean facility, a firewood cutter, and a mushroom gatherer. (AR 19).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the
///
///

decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work he has performed in the past. If Plaintiff is able to perform his previous work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of his residual functional capacity and his age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once Plaintiff establishes that a physical or mental

///

impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the

evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (AR 19). At step two, the ALJ determined that, absent the effects of substance addiction, Plaintiff has the severe impairments of avoidant personality disorder, substance addiction disorder and rheumatoid arthritis affecting joints of the hands and wrists, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 28).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform medium exertion work. (AR 31). He found that Plaintiff was further restricted to only occasional fingering and handling tasks, work requiring a great deal of turning or stress in the wrists, and bending and stooping. (AR 31). He determined that Plaintiff is limited to less than occasional kneeling and crawling, would need a support rail to get up from kneeling or crawling and should avoid working where open containers of alcoholic beverages are stored or served. (AR 31). The ALJ additionally concluded that Plaintiff had non-exertional limitations that further diminished her occupational base; specifically, she would have problems working in environments requiring higher levels of interaction with the general public or unfamiliar people. (AR 32).

At step four of the sequential evaluation process, the ALJ found that Plaintiff lacks the RFC to perform the exertional requirements of her past relevant work. (AR 32). However, the ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her limitations. (AR 32-33). Examples of such jobs included work as an usher, a counter clerk, and a surveillance system monitor. (AR 33). Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 33-34).

///

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. Plaintiff is more limited from a psychological standpoint than what was determined by the ALJ;

2. New evidence submitted to the Appeals Council, a psychological evaluation completed by Dennis R. Pollack, Ph.D., provides additional evidence that she is more limited from a psychological standpoint; and

3. Plaintiff is more limited from a physical standpoint than what was determined by the ALJ.

This court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Psychological Limitations**

Plaintiff contends that she is more limited from a psychological standpoint than what the ALJ determined in this case. (Ct. Rec. 17, pp. 13-18). Plaintiff asserts that psychological evaluations completed by Mr. Sitek and Dr. Pollack support a determination that the limitations given by the ALJ were not adequate. (*Id*.) The Commissioner argues that the ALJ properly evaluated the medical evidence. (Ct. Rec. 20). With regard to Plaintiff's psychological condition, the ALJ chiefly relied upon the findings of Drs. Nielsen, McKnight and Bostwick. (AR 20-28).

///

1  David Nielsen, Ph.D., first evaluated Plaintiff on September
2 17, 2001. (AR 238-240). At that time, Dr. Nielsen diagnosed
3 alcohol dependence and an anxiety disorder, NOS, and indicated
4 that it was "very difficult" to clarify other possible diagnoses
5 given her current and past abuse of alcohol. (AR 240). Dr.
6 Nielsen concurred with the recommendation that Plaintiff enter
7 inpatient chemical dependency treatment. (AR 240). After
8 completing 63 days of chemical dependency treatment, Plaintiff
9 returned to Dr. Nielsen. (AR 241-243). On July 5, 2002, Dr.
10 Nielsen noted that Plaintiff's self-reports were consistent with
11 prior manic episodes and gave a provisional diagnosis of
12 schizotypal personality traits, gave a rule-out diagnosis of
13 bipolar disorder, NOS, and diagnosed alcohol dependence and
14 cannabis abuse in early full remission. (AR 242). Dr. Nielsen
15 recommended that Plaintiff see a nurse practitioner for
16 consideration of possible medication management of her depressive
17 symptoms. (AR 243).

18  On March 13, 2003, Plaintiff was examined by Thomas McKnight,
19 Ph.D. (AR 168-172). Dr. McKnight reported that Plaintiff was
20 fully oriented, her upper level cognitive processes were intact,
21 her fund of knowledge and memory were adequately developed, and,
22 while she seemed somewhat depressed, there was minimal indication
23 of anxiety and no obvious signs of panic. (AR 171). Plaintiff
24 earned a perfect score on the mental status examination. (AR
25 171). Dr. McKnight noted there was "absolutely no indication of a
26 bipolar disorder" during the interview or within the records. (AR
27 171). Dr. McKnight opined that there were no psychological
28 factors that would preclude Plaintiff from performing full-time

gainful employment in jobs involving three step, repetitive tasks. (AR 171). He indicated that Plaintiff was "able to reason, problem solve, and adapt to the requirements of daily living," and opined that Plaintiff was "likely capable of doing more difficult work, with adequate training." (AR 171-172). Dr. McKnight diagnosed Plaintiff with a depressive disorder, NOS, alcohol abuse, by history, arthritis, by self-report, and psychosocial and environmental problems and gave Plaintiff a global assessment of functioning ("GAF") score of 70-75 (as long as she is free of alcohol).[2] (AR 172).

Allen Bostwick, Ph.D., testified at the administrative hearing that Plaintiff had a depressive disorder, NOS, as opposed to a bipolar disorder and that this condition had been relatively well-controlled with medication. (AR 536-537). He stated that her depression was noted to be resolved on July 20, 2003, and she had done relatively well since then. (AR 537). Dr. Bostwick testified that Mr. Sitek's assessments were not supported by the evidence from Stevens County Counseling and opined that Mr. Sitek was advocating for Plaintiff. (AR 539). Dr. Bostwick stated that, from May of 2002 to present, Plaintiff had no limitations with activities of daily living, mild limitations with maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace, and no demonstrated episodes of decompensation. (AR 540).

///

---

[2] A GAF of 80-71 indicates: "If symptoms are present, they are transient and expectable reactions to psychosocial stressors . . .; no more than slight impairment in social, occupational, or school functioning." *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994).

The ALJ additionally noted that progress reports from Stevens County Counseling Services, dated May 28, 2003, to February 23, 2005, demonstrate that Plaintiff was treated for depression, chemical dependency and a bipolar disorder and evidence that Plaintiff's depression appeared to resolve, she was doing well and stable on her medications, she was making progress with developing more social skills, and she continued to manage her bipolar illness through medication management. (AR 25).

Based on the reports of the above medical professionals, the ALJ concluded that Plaintiff did have non-exertional limitations which diminished her occupational base; specifically, problems working in environments requiring higher levels of interaction with the general public or unfamiliar people (AR 32), but did not find any greater mental limitations. The ALJ found that, based on the medical expert's testimony and the medical reports of Drs. Nielsen and McKnight, Plaintiff did not have a severe mental impairment, other than an avoidant personality disorder, absent the effects of drugs and alcohol. (AR 28). The weight of the record evidence of record supports this finding.

As noted by the ALJ, Psychological/Psychiatric Evaluation forms were completed by mental health counselor, Jeffrey Sitek, C.D.M.H.P., L.M.H.C., M.Ed. (AR 23). Mr. Sitek is neither a physician nor a licensed or certified psychologist. Therefore, his testimony and opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations. 20 C.F.R. §§ 404.1513, 416.913.

///
///

Mr. Sitek filled out check-box forms on August 6, 2002 (AR 322-325), May 14, 2003 (AR 326-329), and April 28, 2004 (AR 491-494). A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible). The Psychological/Psychiatric Evaluation forms indicated that Plaintiff had several moderate, marked and severe limitations. These limitations were inconsistent with the assessments of Drs. Bostwick, McKnight and Nielsen, as well as the rest of the evidence of record.

Furthermore, the ALJ also noted that Mr. Sitek's evaluation forms were completed for GAU purposes and tended to advocate for Plaintiff. (AR 31). When a physician is involved in the application process, thus becoming an advocate for the claimant, an ALJ is entitled to consider this factor in evaluating his testimony. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996). Accordingly, the undersigned finds that the ALJ had ample reasons to accord little weight to the opinions of Mr. Sitek.

After the ALJ's decision was filed, Plaintiff was examined in May of 2005 by Dr. Pollack. (AR 516-526). The Appeals Council considered Dr. Pollack's report and determined that this information did not provide a basis for changing the ALJ's decision. (AR 6-9). This Court has jurisdiction to remand matters on appeal for consideration of newly discovered evidence. *Goerg v. Schweiker*, 643 F.2d 582, 584 (9th Cir. 1981); 42 U.S.C. § 405(g). Section 405(g) expressly provides for remand where new evidence is material and there is good cause for the failure to

incorporate the evidence in a prior proceeding. *Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984). To be material, the new evidence must bear directly and substantially on the matter in issue. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. *Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1380-81 (9th Cir. 1984).

The undersigned finds that, despite this new evidence, remand is unnecessary because the denial of benefits remains supported by substantial evidence. Plaintiff has not shown a reasonable possibility of changing the outcome of the ALJ's determination with the new report; therefore, the new evidence submitted by Plaintiff is immaterial.

Moreover, Plaintiff has not shown good cause for her failure to incorporate the report prior to the ALJ's decision. Plaintiff offers no reason why she had not solicited this information from Dr. Pollack earlier. However, a logical explanation is that when Plaintiff failed to succeed on her disability claim, she sought out new evidence to support her assertion of disability. The "good cause" requirement would "be meaningless if such circumstances were sufficient to allow introduction of new evidence." *Allen v. Secretary of Health and Human Services*, 726 F.2d 1470, 1473 (9th Cir. 1984).

Since Plaintiff fails to meet the materiality and "good cause" requirements, the undersigned declines to consider Dr. Pollack's May 2005 report.

///

The ALJ's mental RFC finding is in accord with the weight of the record evidence.  The record does not support a more restrictive finding than Plaintiff being restricted from working in environments requiring higher levels of interaction with the general public or unfamiliar people.  (AR 32).  Accordingly, the Commissioner did not err in so finding in this case.

**B.   Physical Limitations**

Plaintiff also makes a cursory argument that she is more limited from a physical standpoint than as determined by the ALJ in this case.  (Ct. Rec. 17, p. 18).  The ALJ concluded that Plaintiff has the physical RFC to perform medium exertion work.  (AR 31).  In making this determination, the ALJ rejected Mr. Nadeau's opinion that Plaintiff is limited to performing sedentary work activities due to her impairments.  (AR 25).  The Commissioner responds that the ALJ appropriately evaluated the medical evidence of record, and properly rejected Mr. Nadeau's opinion as unsupported by the weight of the record evidence.  (Ct. Rec. 20, pp. 12-14).  The undersigned agrees.

Joe Nadeau, M.S.P.A.C., Plaintiff's treating physician's assistant,[3] completed a physical evaluation of Plaintiff on April 16, 2004.  (AR 487-490).  Mr. Nadeau, on a check-box form,[4] opined that Plaintiff was limited to an overall work level of sedentary, or able to lift a maximum of 10 pounds.  (AR 489).  The ALJ rejected this findings noting that his opinion was inconsistent

///

---

[3] Mr. Nadeau is not a physician; therefore, his testimony and opinions do not qualify as "medical evidence . . . from an acceptable medical source" as required by the Social Security regulations.  20 C.F.R. § 416.913.

[4] A check-box form is entitled to little weight.  *Crane*, 76 F.3d at 253.

- 14 -

with record evidence displaying an improvement of symptoms and indicating that his report was produced for eligibility for public assistance purposes. (AR 25).

The ALJ properly evaluated the evidence of record in this case. (AR 20-31). With regard to Plaintiff's physical limitations, the ALJ primarily relied on Plaintiff's treating physician, Gary L. Craig, M.D. (AR 21-25). As noted by the ALJ, Dr. Craig evaluated Plaintiff on July 2, 2002, and treated her with medication. (AR 21-22, 149-152). By October 2002, Dr. Craig noted that Plaintiff's rheumatoid arthritis had significantly improved. (AR 22, 154). It was noted that Plaintiff reported significantly less joint pain, swelling, and morning stiffness. (AR 22). On December 9, 2002, Dr. Craig reported that Plaintiff was doing "amazingly well" on her medication regimen and assessed mild osteoarthritis of multiple joints, particularly on the hands, minimally symptomatic. (AR 22, 156-157).

On April 24, 2003, Dr. Craig indicated that Plaintiff's nodules were slowly resolving on her current therapy and noted that Plaintiff was looking well and moving around the room easily. (AR 24, 507-508). On September 24, 2003, Dr. Craig noted that there was virtually perfect control of her joint disease on combination therapy. (AR 24, 509-510). Examination revealed no effusions in the hands or wrist joints and she had no joint pain, stress pain or range loss. (AR 24, 510). Dr. Craig reported that Plaintiff was "thrilled with her joints - - she tells me that despite her high level of disability prior to her drug therapy, her joints have settled down to an almost perfect level." (AR 509). On March 31, 2004, Dr. Craig noted that Plaintiff's

seropositive nodular rheumatoid arthritis initially was quite severe but was much improved on medication. (AR 24, 504-506). On January 6, 2005, Plaintiff's care was transferred to a nurse, as Dr. Craig had left the clinic, who noted that Plaintiff was doing fairly well with the current medication regimen. (AR 24-25, 513-514).

It is the responsibility of the ALJ to determine credibility, resolve conflicts in medical testimony and resolve ambiguities. *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). In any event, the Court finds that the ALJ thoroughly analyzed the evidence of record (AR 20-31) and provided specific and legitimate reasons for rejecting Mr. Nadeau's finding that Plaintiff was limited to sedentary work. The weight of the record evidence, and, in particular, the reports of treating physician Craig, support the ALJ's physical RFC determination that Plaintiff is limited to medium work. The ALJ's RFC determination is without error in this case.

## **CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that Plaintiff is capable of performing medium exertion work, while being restricted from working in environments requiring higher levels of interaction with the general public or unfamiliar people, including such jobs as an usher, a counter clerk, and a surveillance system monitor,

1  jobs existing in sufficient numbers in the national economy, is
2  supported by substantial evidence and free of legal error.
3  Plaintiff is thus not disabled within the meaning of the Social
4  Security Act.  Accordingly,
5      **IT IS ORDERED**:
6           1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec.**
7  **16**) is **DENIED**.
8           2.   Defendant's Motion for Summary Judgment (**Ct. Rec.**
9  **19**) is **GRANTED**.
10          3.   The District Court Executive is directed to enter
11 judgment in favor of Defendant, file this Order, provide a copy to
12 counsel for Plaintiff and Defendant, and **CLOSE** this file.
13      **DATED** this ___10th___ day of October, 2006.

                                     s/Michael W. Leavitt
                                     MICHAEL W. LEAVITT
                                  UNITED STATES MAGISTRATE JUDGE